UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN ANDREW TAPIA,<br><br>            Plaintiff,<br><br>    v.<br><br>RALPH DIAZ, et al.,<br><br>            Defendants. | Case No. 1:20-cv-01790-NONE-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S EIGHTH AMENDMENT FAILURE TO PROTECT CLAIM AGAINST DEFENDANTS SMITH AND CURTICE, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(ECF No. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS<br><br>ORDER DIRECTING CLERK TO SEND PLAINTIFF A COPY OF COMPLAINT (ECF No. 1). |

Brian Tapia ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983, which includes state law claims. Plaintiff filed the complaint commencing this action on December 21, 2020.  (ECF No. 1).

The Court reviewed the complaint and found that the following claim should proceed past screening: Plaintiff's Eighth Amendment failure to protect claim against defendants Smith and Curtice.  (ECF No. 9).  The Court also found that no other claims should proceed past screening.  (Id.).

1

The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint; b. Notify the Court in writing that he does not want to file an amended complaint and instead wants to proceed only on his Eighth Amendment failure to protect claim against defendants Smith and Curtice; or c. Notify the Court in writing that he wants to stand on his complaint." (Id. at 13-14). On March 5, 2021, Plaintiff filed his response to the Court's screening order, stating that he wants to stand on his complaint. (ECF No. 10).[1]

Accordingly, the Court issues these findings and recommendations to the district judge consistent with the screening order. Plaintiff has fourteen days from the date of service of these findings and recommendations to file his objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 6), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

---

[1] As Plaintiff chose to stand on his complaint instead of filing an amended complaint, the Court will not address any factual allegations that are included in Plaintiff's response but not in his complaint. The Court will, however, grant Plaintiff's request for a copy of his complaint.
  The Court also notes that if Plaintiff fails to prosecute this action after he is released, this action will be dismissed. After Plaintiff is released he should file a notice of change of address as soon as possible. Additionally, if Plaintiff is unable to meet a deadline or attend a hearing, he should file an appropriate motion asking for an extension of time.

2

conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II.    SUMMARY OF PLAINTIFF'S COMPLAINT

On February 1,[2] around 11:00 p.m., Plaintiff's cellmate was manic and suicidal.  He was attacking Plaintiff's cellmates and covering the cell with pepper and other food seasonings.  He did this in front of defendant Correctional Officer Smith.

Defendant Smith was fully aware of the situation and asked to see Plaintiff's other cellmate's face for blood.  Defendant Smith was also aware that the cell was completely covered with pepper and other food seasonings.

The mentally ill inmate then told defendant Smith, "I can't be in here," "[g]et me out," "[m]an [d]own," "someone/I'm going to get hurt."  This type of conversation occurred for over three minutes, with non-stop banging on the door and screaming.  Defendant Smith then argued back, saying "no, I'm not going to do anything" for over three minutes.  Defendant Smith then continued his walk down the hallway.

As defendant Smith returned from down the hallway, Plaintiff's manic cellmate argued with defendant Smith again for three minutes, saying, "I can't be in here," "[g]et me out," "[m]an [d]own," "[s]omeone/I'm going to get hurt."  Plaintiff's manic cellmate was banging on

---

[2] Plaintiff does not allege the year, but based on the attachments to the complaint it appears that the incident occurred in 2020.

the door and screaming. Defendant Smith's response was the same. He said "no, I'm not going to do anything" for over two minutes.

Plaintiff's manic cellmate then broke the door's window with his head. Defendant Smith's response was, "[f]uck, now I have to take you." Plaintiff's other cellmates were checked for wounds again.

A few hours later, at around 4:00 a.m. on February 2, while Plaintiff and his other cellmates were asleep, Plaintiff's manic and suicidal cellmate was returned by defendant Smith and defendant Sergeant Curtice. The manic and suicidal cellmate was unsupervised and unsecured. This left Plaintiff and his other cellmates unprotected and in danger.

Plaintiff's manic and suicidal cellmate again attacked the cell, inmates, and inmate property with garlic and seasoning salt. This occurred while Plaintiff and his other cellmates were sleeping.

Plaintiff woke up around 5:00 a.m. covered in blood. His neck was pouring out blood. Plaintiff was unaware that he was bleeding, and his shirt was completely covered in blood. Plaintiff then noticed that he could not feel his neck and it felt like half his neck was cut off.

Plaintiff then grabbed a towel and tried to cover his open neck to stop the bleeding. Plaintiff was unable to get to the door for medical attention because his manic and suicidal cellmate was in the way.

All of the noise and commotion caused defendant Smith to return after a few minutes. Defendant Smith acknowledged the vandalized cell again, with Plaintiff's manic and suicidal cellmate being crazy again. Defendant Smith also saw Plaintiff's blood, his situation, and his need for medical attention. However, he ignored Plaintiff and tried to leave.

With assistance, Plaintiff got defendant Smith's attention again and forced him to open the door for Plaintiff to get medical attention. This was accomplished by yelling at defendant Smith while defendant Smith tried to ignore Plaintiff.

While Plaintiff's manic and suicidal cellmate was being removed for Plaintiff to get medical attention, defendant Curtice came in and acknowledged he knew that this inmate was a danger and currently out of control. He said "[t]his sucks i'm sorry. I knew he was a problem,

but he would of done this anyways, no matter what I did with him.  So it doesn't really matter."[3]

The cut Plaintiff received was about three inches long, 3/16ths of an inch think, and about 3/16ths of an inch deep.  Plaintiff's white t-shirt was covered in blood, and Plaintiff had to hold a rag that was soaked in blood over his neck while he forced defendant Smith to get medical help.

Plaintiff now suffers from PTSD.  He cannot sleep.  He has a giant scar that covers half his neck.  It is extremely uncomfortable every day.  The scar feels painful, dry, and itchy, like dead skin, every day.

Plaintiff attached approximately twenty pages of exhibits to the complaint.

### III.  ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A.  Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing

---

[3] Errors in original.

"under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal

quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B. Failure to Protect in Violation of the Eighth Amendment

To establish a failure to protect claim, a prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "'Deliberate indifference' has both subjective and objective components." Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013). A prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Labatad, 714 F.3d at 1160 (quoting Farmer, 511 U.S. at 847).

Plaintiff has alleged that his manic and suicidal cellmate was attacking his cellmates. Defendant Smith knew this, yet failed to protect Plaintiff, and even returned the inmate to Plaintiff's cell a few hours after removing him. Defendant Curtice acknowledged that he knew that this cellmate was dangerous, but also failed to protect Plaintiff and even returned the inmate to Plaintiff's cell.

Based on the allegations in the complaint, the Court finds that Plaintiff's Eighth Amendment failure to protect claim against defendants Smith and Curtice should proceed past screening.

The Court also finds that Plaintiff failed to state a claim against defendants Secretary Diaz and Warden Fisher. Plaintiff does not include any factual allegations regarding these defendants. Thus, there are no factual allegations suggesting that they personally participated

in the alleged deprivation(s), that they instituted a policy that caused the deprivation(s), that they knew of the alleged deprivation(s) but failed to prevent them, or that their failure to train or supervise their subordinates led to the alleged deprivation(s).  Plaintiff's conclusory allegations that these defendants do not train staff or enforce the rules, and Plaintiff's conclusory allegation that defendant Diaz instituted an underground policy of "doing nothing," are not sufficient.

### C. Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).  Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted).  Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to

establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff alleges that after he got cut by his cellmate, which caused blood to pour out of his neck, defendant Smith saw Plaintiff's blood and need for medical attention, but tried to leave. With assistance, Plaintiff eventually forced defendant Smith to open the door for Plaintiff to get medical attention.

The Court finds that Plaintiff has failed to state an Eighth Amendment claim for deliberate indifference to his serious medical needs against any defendant. As to defendant Smith, there are no allegations directly addressing how long defendant Smith made Plaintiff wait for treatment. Even liberally construing Plaintiff's allegations, it appears that the delay was short. Moreover, after the short delay defendant Smith opened the door for Plaintiff to get medical attention, and there is no indication that the delay had any effect on Plaintiff's condition or outcome. "Where a prisoner alleges that delay of medical treatment demonstrates deliberate indifference, the prisoner must show that the delay caused 'significant harm and that defendants should have known this to be the case.'" Mamea v. Thung, 2021 WL 289376, at *6 (E.D. Cal. Jan. 28, 2021) (quoting Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002)). As there are no allegations suggesting that the short delay caused Plaintiff any harm, Plaintiff has failed state an Eighth Amendment claim for deliberate indifference to his serious medical needs against defendant Smith.

As to defendants Curtice, Diaz, and Fisher, there are no factual allegations suggesting that they personally participated in the alleged deprivation(s), that they instituted a policy that caused the deprivation(s), that they knew of the alleged deprivation(s) but failed to prevent

them, or that their failure to train or supervise their subordinates led to the alleged deprivation(s).  Plaintiff's conclusory allegations that defendants Diaz and Fisher do not train staff or enforce the rules, and Plaintiff's conclusory allegation that defendant Diaz instituted an underground policy of "doing nothing," are not sufficient.  Accordingly, Plaintiff has failed to state an Eighth Amendment claim for deliberate indifference to his serious medical needs against defendants Curtice, Diaz, and Fisher.

### D.  State Law Claims

#### a.  California Government Code § 845.6

California Government Code § 845.6 provides:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care….

"In order to state a claim under § 845.6, a prisoner must establish three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care."  Jett, 439 F.3d at 1099.  "Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care."  Id. (quoting Watson v. State, 21 Cal.App.4th 836, 26 Cal.Rptr.2d 262, 265 (Ct.App.1993)).

The Court finds that Plaintiff failed to state a § 845.6 claim against any defendant.  As to defendant Smith, there is no indication that he failed to reasonably summon medical care.  As discussed above, at most Plaintiff has alleged that there was a short delay before defendant Smith opened the door so Plaintiff could get medical treatment, and there are no allegations suggesting that this short delay caused Plaintiff any harm.

The Court also finds that Plaintiff failed to state a § 845.6 claim against defendants Curtice, Diaz, and Fisher because there are no allegations in the complaint suggesting that these defendants knew or had reason to know that Plaintiff needed medical care yet failed to reasonably summon such care.

|   |   |
|---|---|
| 1 | b. California Government Code § 844.6 |

This section appears to provide immunity to public entities in certain situations. See, e.g., Towery v. State of California, 14 Cal. App. 5th 226, as modified (Aug. 14, 2017); Lawson v. Superior Court, 180 Cal. App. 4th 1372, 1388 (2010). There is no indication in this section that it creates a cause of action. Thus, Plaintiff has failed to state a claim under this section.

c. California Government Code § 815.2

California Government Code § 815.2 provides:

> (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.
>
> (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.

This section allows for the vicarious liability of public entities in certain situations. See, e.g., Nozzi v. Hous. Auth. of City of Los Angeles, 806 F.3d 1178, 1203 (9th Cir. 2015), as amended on denial of reh'g and reh'g *en banc* (Jan. 29, 2016) ("Under California Government Code § 815.2, a public entity is 'vicariously liable for its employees' [non-immune] negligent acts or omissions within the scope of employment[.]'") (alterations in original) (quoting Eastburn v. Regional Fire Protection Authority, 31 Cal.4th 1175, 7 Cal.Rptr.3d 552, 80 P.3d 656, 658 (2003). To begin, the Court notes that Plaintiff did not name a public entity as a defendant. However, even treating Plaintiff's official capacity claims as claims against the State of California,[4] it does not appear that Plaintiff brought any additional state law claims for which the State of California could be vicariously liable.[5] Accordingly, Plaintiff has failed to state a claim under this section.

The Court notes that Plaintiff may have a state law negligence claim against at least

---

[4] "Suits against state officials in their official capacity … should be treated as suits against the State." Hafer v. Melo, 502 U.S. 21, 25 (1991).

[5] Plaintiff did bring a state law claim under § 845.6, but the Court has found that Plaintiff failed to state a claim under § 845.6.

some defendants,[6] but did not bring a negligence claim against any defendant and chose to stand on his complaint.

### d. California Government Code § 815.6

California Government Code § 815.6 provides:

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

"California courts utilize a three-pronged test to determine if liability for a mandatory duty may be imposed upon the public entity: (1) a statute or enactment must impose a mandatory duty (2) that intends to protect against the kind of risk of injury suffered by the plaintiff, and (3) breach of the mandatory duty must be a proximate cause of the injury suffered." Asberry v. Salinas Valley State Prison Facility-D Male Dentist "G.", 2021 WL 121124, at *2 (N.D. Cal. Jan. 13, 2021) (quoting County of Los Angeles v. Superior Court, 102 Cal. App. 4th 627, 638-39 (2002).

To begin, the Court notes that Plaintiff did not name a public entity as a defendant. However, even treating Plaintiff's official capacity claims as claims against the State of California, Plaintiff has failed to state a claim because Plaintiff has not cited to any statute or regulation that is designed to protect against the risk of the kind of injury suffered by Plaintiff. Plaintiff appears to rely on California Code of Regulations, Title 15, § 3365. (ECF No. 1, pgs. 6 & 10). However, this section, which is titled "Suicide Prevention and Response," deals protecting "inmates who display self-injurious or suicidal behavior." Cal. Code Regs. tit. 15, § 3365. The section does not discuss protecting inmates from other inmates, and thus does not appear to be designed to protect against the risk of the kind of injury suffered by Plaintiff. Accordingly, Plaintiff has failed to state a claim under § 815.6.

\\\

---

[6] "The elements of any negligence cause of action are duty, breach of duty, proximate cause, and damages." Peredia v. HR Mobile Servs., Inc., 25 Cal. App. 5th 680, 687 (2018) (citing Artiglio v. Corning Inc., 18 Cal. 4th 604, 614 (1998).

      e. California Government Code § 815.7

  Section 815.7 does not appear to exist.  Accordingly, Plaintiff has failed to state a claim under this section.

**IV. CONCLUSION AND RECOMMENDATIONS**

  The Court has screened the complaint and finds that Plaintiff's Eighth Amendment failure to protect claim against defendants Smith and Curtice should proceed past the screening stage.  The Court also finds that Plaintiff's complaint fails to state any other claims.

  As Plaintiff was given leave to amend but chose to stand on his complaint, the Court does not recommend granting further leave to amend.

  Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's Eighth Amendment failure to protect claim against defendants Smith and Curtice; and

2. All other claims and defendants be dismissed.

  These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

  Additionally, IT IS ORDERED that the Clerk of Court is directed to send Plaintiff a copy of his complaint (ECF No. 1).

IT IS SO ORDERED.

Dated: **March 9, 2021**    /s/ Erica P. Grosjean
               UNITED STATES MAGISTRATE JUDGE